IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

LARA ZAMORA-CRUZ

    Defendant,

vs.

UNITED STATES OF AMERICA

    Plaintiff.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 03 2020

JEFFREY P. COLWELL
CLERK

Case Number: 1:17-CR-00116-RM-3

Judge RAYMOND P. MOORE

### DEFENDANT'S MOTION REQUESTING COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582 (c)(1)(A), REQUEST BASED ON MEDICAL CIRCUMSTANCES, SERIOUS PHYSICAL OR MEDICAL CONDITION.

COMES NOW, Defendant Lara Zamora-Cruz appearing pro se, respectfully moving this honorable Court to grant Compassionate Release. Lara hereby moves this Court for an order both releasing her from the custody of the Bureau of Prisons and allowing her to complete the balance of her sentence in the manner this honorable Court deems appropriate, according the statues of home confinement or probation.

Respectfully submitted,

*Lara Zamora-Cruz* (signature)

Lara Zamora-Cruz
74732-112
FCI Phoenix Camp
37930 N. 45th Ave
Phoenix, AZ 85086

### MEMORANDUM

**I. Procedural Background**

Defendant, Lara Zamora-Cruz (Lara), pleaded guilty to Count 1 and Count 2 of 21 U.S.C. 846 and 841. Judgment was imposed on January 18, 2019 by Jurisdictional Court for: a 72 month term of imprisonment and 5 years of supervised release.

1

Defendant has served 2 years and 10 months (48% of sentence) of her sentence. Lara's statutory release date is May 31, 2022 with a full term release date of April 20, 2023.

## II. Application of The Liberal Construction Doctrine

As a pro se litigant incarcerated and without the benefit of formal training as an attorney, Defendant is entitled to and contemporaneously invokes the full measure of the liberal pleading standard as expressed in Estelle v. Gamble, 429 U.S. 97 (1976). The doctrine obliges the honorable Court to apply the law liberally and with the duty of construance under any provisions or practice which would be most beneficial for the relief sought. As this result of the Defendant's pro se status, the instant motion must be held to less stringent standards than those drafted by attorneys. Haines v. Herner 404 U.S. (1972).

### III. Applicable Legal Standard

Pursuant to 18 U.S.C § 3582 (C)(1)(A), the Amendment to The First Step Act of 2018, and Application Note 1B1.13 related to compassionate release eligibility for medical condition, the standards are in pertinent part as follows. For decades, only the Bureau of Prisons (BOP) Director and the United States Attorney General's Office could seek a sentence reduction after the Criminal Judgment was filed. However, that changed with the passage of The First Step Act of 2018. After December 21, 2018, the Defendant, in limited circumstances, also has a voice in reducing their sentence based on Compassionate Release for Extenuating Circumstances.

The First Step Act sets forth the following eligibility criteria for an inmate seeking Compassionate Release: (1) seek BOP assistance in filing a motion. This request must be either denied or ignored thus resulting in the failed action of no motion being filed; (2) set forth relevant 3553 (a) factors to support the motion and demonstrate why the reduction is consistent with applicable policy statements issued by the Sentencing Commissions; and (3) set forth the "extraordinary and compelling reasons" warranting the reduction, 18 U.S.C. §3582 (C)(1)(A).

18 U.S.C. §3582 (C)(1)(A) and 1B1.13 Commentary, Application Notes and Guidelines also states in pertinent part that extraordinary and compelling reasons exist under any of

2

the circumstances set forth. In this instant case the applicable circumstances is, Medical Circumstance, Defendant is suffering from a serious physical or medical condition. Further in pertinent part...foreseeability of extraordinary and compelling reason reasonably could have been seen, known or anticipated by the Sentencing Court does not preclude the consideration for reduction under this Policy Statement.

**IV. Factual Background**

A. Medical Condition

Lara was diagnosed with CREST syndrome since being in BOP custody. See Exhibit A - BOP Medical Records: Clinical Encounters August 5, 2019. CREST Syndrome is an incurable disease, that is exceptionally painful and ultimately fatal in 65% of all cases as is Lara's prognosis. CREST Syndrome is an auto immune disorder where the immune system stimulates the production of too much collagen. The collagen builds up in the skin and internal organs impairing their function thus causing abject deterioration. Progressive vascular abnormalities in the skin, joints and especially the esophagus, lower GI tract, lungs, heart and kidneys account for most deaths. Lara's available (See Exhibit B - Emails to Staff, regarding issues with records requests) medical records demonstrate progressing lung deterioration with pulmonary hypertension. The numerous symptoms associated with this disease make it difficult for Lara to function in a correctional facility.

According to Medicare standards a patient of Lara's age and diagnosis would be receiving daily in home health care to make her more comfortable; not working daily in a prison environment, battling pain for which there is no effective palliative care offered and without the support of family and friends to aid her in the basics of dressing, frequently standing, feeding and generally being able to manage a humane existence. In accordance with the chronic disease course daily bodily pain is growing per medical records. Even more morbid, the paralysis and pain in Lara's hands yields self care almost impossible and it worsens daily. The loss of lumbar lordosis, the fixed bent forward morbid posture along with comprimised pulmonary issues are widely known by medical experts to create an inability to lie flat. The correctional facility does not have the ability to offer proper inclining support. These are just some of the many morbidity issues of this

3

insolent disease.

See Exhibit A - BOP Medical Records: Sun Valley Arthritis Center 05/23/2019. The medical summary states in pertinent part, on page 9, this patient has multiple extensive diagnosis. Further, the patient's table of risk factors for potential complication and morbidity/mortality is moderate to high. On page 2 of 9 in the letter to Dr. Ford it also addresses the pain that significantly diminishes her ability for self case. Defendant's condition has only worsened with specific pulmonary conditions. Subsequent to a pulmonary specialist visit in October 2019, medical staff member Dr. Green at the Phoenix camp shared with Defendant that based on the severity of her condition Compassionate Release was a reasonable option for her, See Exhibit C - Emails Request to Staff Green, November 11, 2019. However, the BOP has done nothing to support filing the motion on Lara's behalf for compassionate release.

### B. Medical Administrative and Facility Environment

In early May 2019 an "Attitute-Morale" survey was conducted at the Phoenix Camp. During the week of May 24, 2019 the Regional BOP staff conducted a visit. Inmates were interviewed. Topics included follow up from the concerns in the survey. A staff member from the regional education department spoke with inmates. He shared that feedback from his interviews were consistent with feedback from the survey in that medical was a top issues for inmates. He encouraged inmates to use the Request to Staff Email function to address their concerns so they would have documentation for their Administrative Remedy Process. The Defendant utilized this advice.

Defendant has encountered challenges in BOP custody with timely follow up to manage treatment of her serious disease along with its debilitating morbidity and fatality issues. See Section V. Position for Compassionate Release, C. BOP Chronic Care for more insights and findings from the Department of Justice regarding issues with BOP medical. For those with the most chronic and fatal disease courses the BOP has proven it is not equipped in the inherent processes to provide adequate care.

### C. Administrative Compassionate Release Motion Request Results

In this instant case, after encountering issues of ineffective medical treatment for

"chronic" medical conditions, and a continual decline in health; consistent with 18 U.S.C. § 3582 (c)(1)(a) Lara sought Compassionate Release from the Warden at the Federal Correctional Institute Phoenix Camp facility. Her request was treated with apathy, indifference, and inadequacy. Lara filed 3 request to the Warden/his designated Compassionate Release Coordinator (CRC) via the stated process of a request to staff to be submitted through the Receiving and Delivery Mailbox. Her request was ultimately denied after more than 30 days from submission of the first request.

### D. Compassionate Release Standards

Lara submitted her request for Compassionate Release per instructions to the Warden's Case Manager Coordinator (CMC) on September 12, 2019 in the Receiving and Delivery Mailbox. Once 30 days had passed with no response she followed up with the CMC on October 15, 2019. See Exhibit D - Emails to Case Manager Coordinator Wastell. The CMC stated she had not received the request. Lara submitted another request on October 21, 2019. The CMC stated she also had not received that one in another email exchange in Exhibit C on October 25, 2019. Lara then submitted another request and handed it directly to the Unit Case Manager per instructions in the email from CMC.

However, based on the Warden's denial letter dated 11/4/19 it states the Inmate Request to Staff was received October 8, 2019 which is prior to the aforementioned email exchange stating nothing had been received as of October 25, 2019. See Exhibit E - Denial Letter from Warden. Something does not add up in the BOP's account for the original request. This type of indifference and descrepency is common with the BOP when it comes to compassionate release request. The bottom line is Laura submitted a request and September 14, 2019, received some runaround as she followed up diligently. Then it was not unil November 4, 2019 that after three submissions and a documented paper trail that she received a denial.

The aforementioned runaround and the following would create urgency for anyone to exercise their rights to file with the Court directly based on the "earlier" option The First Step Act affords. Additional runaround is as follows regarding needed documents for Compassionate Release filing. Lara's updated medical records have not been delivered

5

timely to support her in filing for compassionate release based on the picture of progression in her morbid and fatal disease. In a health care encounter with Dr. Ford of the BOP on February 21, 2019, the Dr. said Lara's disease is progressing quickly and he also feels Compassionate Release is a reasonable solution for her disease. See Exhibit D Emails to Staff: Medical Record Requests. Lara's health can't continue to afford the runaround she has received through the BOP process.

This is a key reason the First Step Act provided Defendant's the ability to file directly with the Court. The law specifically stating per the First Step Act amendment in 18 U.S.C. § 3582 (C)(1) to allow an inmate to present at request for compassionate release directly to the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier." (A) The BOP has a long history of lacking support in filing motions on behalf of Defendant's as addresses in the next section V. Position for Compassionate Release. C. BOP Chronic Care.

In Jones v. United States, 2:16-CR-166 (August 2019) (6th Circuit) the following argument was made in the granting of this Compassionate Release.

> This Court is not required to accord the Warden's recommendation with any difference. ID. at *12. Instead the First Step Act gives Courts the independent authority to grant motions for Compassionate Release and says nothing about deference to the BOP, thus establishing that Congress wants Courts to take a de novo look at Compassionate Release Motions. ID. at *13. There are no policy statements the Sentencing Commission has promulgated to apply to the inmate generated Compassionate Release Motions. ID. at *5. Additionally, this guidance is unlikely to come anytime soon....However, the Courts confronting inmate generated Compassionate Release Motions have found that applying U.S.S.G. 1B1.13, which was drafted to guide motions filed by the Warden, would be inappropriate. ID. at *6. Instead, Courts should consider the 1B1.13 Policy Statement, Application Notes, as well as § 3553 factors in adjudicating motions.

6

ID at *7. The Application Notes 1B1.13 read as a whole, suggest a flexible approach which considers all relevant circumstances. Further, they indicate Medical Circumstance alone or in conjunction with other

factors can constitute extraordinary and compelling reasons... ID. at *8.

## V. Position for Compassionate Release

The legal standards combined with the sustenance of recent Criminal Justice Reform make way for the Courts to exact relief for extenuating circumstances prisoners face while acting in the interest of public safety. This earnest petition at the mercy of the Court for Compassionate Release respectfully comes pursuant to the Motion's referenced legal standards and Criminal Justice Reform.

### A. Criminal Justice Reform

In August of 2017, twelve U.S. Senators, disappointed in the BOP's rare use of Compassionate Release wrote a letter to the Director of the BOP and Deputy Attorney General. They expressed concerns over the Compassionate Release Program. See Exhibit F - Senators' Letter. They addressed: appropriate use of Compassionate Release, desire for the BOP to file more motions on Defendant's behalf, lack of impact on public safety, and low recidivism and re-arrest rates (3.5% recidivism for Compassionate Release grantees, 15% for those over 50 and 41% for the general population).

### B. Applicable Precedence and Advocacy

In the case of DiMasi v. United States (1st Circuit) (2016) the Court set relevant precedence in the wording of the order to grant compassionate release. In pertinent part it addresses the following. The Sentencing Commission, the Department of Justice, and organizations including Human Rights Watch have encouraged the BOP to file motions for Compassionate Release more often pursuant U.S.C. 18 3582 § (C)(1)(A), 1B1.13 Commentary, and Applications Notes.

This would allow the Court to perform their traditional role in weighing all of the competing considerations in deciding what sentence is sufficient and no more than necessary for that inmate at this time. Now after December 21, 2018 The First Step Act also encourages the aforementioned. To reiterate, instead of following this encouragement

7

the Warden has taken no action in granting the request to file the motion. 30 days has lapsed thus bring Lara before this Court based on her statutory rights.

Further the DiMasi v United States Case Order stated a reduction in his sentence, "will give him the ability to seek from doctors and hospitals of his choice, what may be better medical care than the Bureau of Prisons is obligated to offer". The case clearly lays out a challenge and subsequent judicial solution...those with more chronic health conditions in BOP custody needing better, optimal, effective care being granted Compassionate Release.

Also relevantly noted in the case, The Supreme Court has held that not providing adequate care to prisoners was a violation of the Constitution's Eighth Amendment against cruel and unusual punishment. The Eighth Amendment guarantees inmates in the Bureau of Prisons' custody adequate medical care for a serious medical need see Farmer V Brennan, 511 U.S. 852, 832, 114 S. CT. 1970, 128 L. ED. 2d 811 (1994), Estelle v Gamble, 429 U.S. 97,103-05, 97 S. CT. 285, 50 L. ED 2d 251 (1976). However, a constitutional right to health care does not guarantee its equitable delivery or its quality. It does not require that the Bureau of Prisons provide optimal medical care or care of an inmates choosing. See United States v Derbes, 369 F. 3d 579, 583 (1st Cir. 2004); Des Rosiers v Moran, 949 F. 2d 12, 18 (1st Cir. 1991); United States v. DeClogero, 821 F. 2d, 39, 42-43 (1st Cir. 1987).

Three cases of relevant importance since the passing of The First Step Act providing inmates with the statutory right to file directly with the Court based on no action to actually file a motion based on the request, are: Evans v United States (5th Circuit) (March 2019); Beck v. United States, 2019 WL 2716505; Jones v. United States, 2:16-CR-16, (August 2019).

Further the granting of these cases reflects the Court's weighing of 3553 (a) factors with the extenuating circumstance. The desire for low risk prisoners with serious health issues to seek optimal care due to BOP indifference and latency is demonstrated in these cases. Within the actual meaning of U.S.S.G. § 1B1, comment (n.1(A)(ii))), Defendant is suffering from a serious physical or medical condition that "Substantially diminishes

8

[her] ability to provide self-care within the environment of a correctional facility and from which [she] is not expected to recover. Additional case precedent for optimal care of someone with a dimished capacity to function in a correctional facility is Maria Del Carmen Romero v United States (EP-13-CR-01649-4-FM) (5th Circuit) (December 2019)

### C. The BOP's Ineffective Chronic Medical Care

Jack Beck of the Correctional Association of New York has said, "The Prison environment is not conducive to good health care, the [prisoners] are inmates first and patients second". Judge Eagles noted it best in the Beck Case saying in pertinent part, "the quality of Ms. Beck's cancer treatment at the BOP in the past remains the best predictor of what it will be in the future.

On August 4, 2015 The Inspector General of the U.S. Department of Justice, Michael E. Horowitz, testified before the U.S. Senate Committee on Homeland Security Governmental Affairs on the impact that incarceration has. https://oig.justice.gov/testimony/t150804.pdf. Inspector Horowitz explained there are significant delays in making medical specialist available to inmates. Further that BOP facilities are often understaffed. Inmates with medical conditions more often necessitate trips outside the institution for specialized medical care, demanding additional correctional officers to staff the trip. Moreover, the BOP facilities are not equipped to house inmates with medical challenges.

### D. Nature and Circumstances of Lara's Offense

Our family was in an economic hardship due to my husbands illness and need of an emergency surgery. I contacted an old acquaintance for help. That person lent me $10,000 and in return I was to transport narcotics to Colorado. I am not making excuses for my decision. I hold myself fully accountable for my mistakes. I have learned from my mistakes and will not repeat them.

### E. Lara's History and Characteristics and 3553 (a) Factors

Lara has behaved as an exemplary inmate even as she endures the pain of her disease. The Defendant understands your Honor has to weigh all 3553 factors when considering this motion thus ensuring the sentence is pertinent part, sufficient, but not greater than

9

neccessary". "...to promote respect for the law...punishment for the offense, adequate deterrence, protect the public, medical care in the most effective manner".

Since incarceration at the Phoenix Camp Laura has enrolled in several education courses including re-entry classes. See Exhibit G - Education Courses. Lara consistently participates in faith-based activities of: Sunday Christian church service, bible study and prayer meeting. Lara us committed to re-entering society in an effective manner. Lara is a low risk inmate with camp status. She qualifies for earning Earned Time Credit under the First Step Act based on the Act's new PATTERN Tool Assessment. The rehabilitative activities Laura is participating in are proven recidivism reduction activities.

Further, under 3553 deterrence of others is a consideration. Granting Compassionate Release to Laura would maintain deterrence for other committing a similar crime due to the extraordinary and extenuating circumstances in this instant case. Unless a similar offender had Lara's chronic progressive illness that has a moderate to high morbidity and mortality rate as determined by an objective BOP contracted medical specialist, they would serve their full time.

Lastly the consideration for proper more effective medical treatment is key. In the United States v. Jones (August 2019 6th Circuit) it was argued that Courts should consider the 1b1.13's policy statements, its application notes as well as §3553 factors in adjudicating inmate motions. The application notes to §1B1.13, read as a whole suggest, "a flexible approach which considers all relevant cirsumstances." They indicate that medical condition alone or in conjunction with other factors, can constitute extraordinary and compelling reasons.

### F. Alternatives in Incarceration

United States Attorney General, William Barr was quoted in a New York Times Article on July 20, 2019 after touring a Federal Prison. He said, ..."he felt the time was right to identify and free inmates who no longer constituted a safety risk. He went on to say, "after someone has been in prison for a substantial period of time and you can really assess whether they continue to pose a threat to the community. Then you're more inclined to modify the sentence or strike the balance in favor of some kind of monitoring that

10

doesn't involve the heavy cost and the isolation of this kind of prison system.

Under § 994 (j) it embodies Congress' judgment that individuals convicted of non-violent predatory offenses presenting low-risk of recidivism, like Defendant, should be sentenced to alternatives to incarceration. Defendant's continued detention in BOP custody poses an unacceptable risk to her health thus constituting an extraordinary and compelling circumstance under both U.S.S.G § 1B1.13 comment (n.(1)(A) and (D)). For those already serving a term of imprisonment The First Step Act affords low risk and recidivism prisoners with alternatives to incarceration. This alternative comes via home confinement for probation through good time and earned time credit. Thus the spirit and statutes of Criminal Justice Reform has threads of **ALTERNATIVES TO INCARCERATION** in all pertinent sections.

The Sentencing Commission has found those benefitting from retroactive sentence reductions as well sentence reductions due to Compassionate Release Programs do not pose a higher risk of recidivism. Other reasons for this shift in policy to home confinement with location monitoring is it is an effective method of punishment rather than simply incarcerating those who don't present a danger to the public.

Further evidence of this shift in policy is by Congress and the Sentencing Commission is the November 1, 2018 Amendment to U.S.S.G : 5F1.2, Comment, (n.1)(amendment 811). In the commentary to this guideline, the Commission noted that, "electronic monitoring in an appropriate means for surveillance for home detention". After holding the requisite public hearings on this proposed amendment, the Commission articulated the following reason for the amendment to 5f1.2: "the goal of this change is to increase the use of probation with home detention as an alternative to incarceration." Alternatives to Incarceration for Nonviolent First Offenders, April 30, 2018. https://www/ussc.gov/sites/default/files/pdf/amendment-process/reader/friendly-amendment/20180430RF.pdfp.74. Thus further validation that if the Defendant were to have a term of home confinement or probation substituted for the imprisonment she still faces, she would not pose a danger to the public, and would receive sufficient punishment/deterrence.

**VI. Proposed Release Plan**

**Residence:** 18298 Nordoff St. Northridge, CA 91325

**Work Plan:** Lara is disabled. However, if optimal health care is able to return her to a stable state, she will seek appropriate employment in the future given her particular circumstances. **Medical Insurance:** Kaiser Permanente through my husband's job at Calex Engineering Co.

### VII. Conclusion

Based on Lara's incurable, chronic, progressive disease which has significantly diminished her ability to provide self-care in a correctional facility pursuant to statute U.S.C. 18 §3582 (C)(1)(A) the immediate granting of compassionate release is being sought. Lara's disease with a 65% survival rate and confirmed by a BOP contracted doctor to be moderate to high in morbidity and morality needs immediate optimal care. In addition two BOP medical staff members have also stated that Lara's condition is progressing quickly and compassionate release is even a reasonable solution to them. It was not implied in Lara's sentence that she would have such and arduous laborious existence. She takes responsiblity for her actions. This request is not to absolve her. Lara would rather not have this insolent disease. The BOP is not a medical industry and is simply not equipped to provide the care needed. Thus is the reason for compassionate release and the amendments in 2013, 2016 and 2018 to make it more available for the chronically ill. The final amendment providing access for Defendant's directly to the Court's based on the apathetic peformance from the BOP as outlined in the Senator's letter.

### CERTIFICATE OF SERVICE

I hereby declare and certify, under penalty of perjury, a true and accurate Motion to the best of my knowledge under 18 U.S.C. § 3582 (C)(1)(A) Request for Compassionate Release was filed. The Motion is being mailed to the Court for Electronic filing and service to the US Attorney.

*Lara Zamora-Cruz*
Lara Zamora-Cruz

Cruz Lara Zamora #74732113
Federal Prison Camp
37930 N. 45th Ave.
Phoenix, AZ 85086-7057

Clerk for Judge Raymond P. Moore
Alfred A. Araj U.S. Courthouse
901 19th St.
Denver, CO 80294



